**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JAMES D. CALEN,

                              Plaintiff,

               -against-

UNITED STATES OF AMERICA,

                            Defendant.

-------------------------------------------------------------X

                                                     **REPORT AND**
                                     **RECOMMENDATION**

                               CV 18-2183 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    <u>PRELIMINARY STATEMENT</u>

Plaintiff James Calen ("Plaintiff"), proceeding *pro se*, commenced this action against Defendant, United States of America ("Defendant" or "the Government") on April 12, 2018, alleging violations of the Internal Revenue Code, 26 U.S.C. § 7421 *et seq*., arising from  (1) the IRS's disallowance of Plaintiff's net operating loss deductions on his 2008 and 2009 tax returns and (2) the improper levying of Plaintiff's bank and brokerage accounts.  *See* Pro Se Form Complaint ("Compl.") [DE 1] at Section III ¶¶ 1-3.

Pending before the Court at this time are:  (1) Plaintiff's second motion for leave to amend the Complaint; (2) Defendant's motion to dismiss the Complaint; and (3) Plaintiff's motion to amend the Complaint a second time.  *See* Plaintiff's Motion for Leave to File Amended Complaint [DE 24]; Defendant's United States of America's Motion to Dismiss [DE 28]; Plaintiff's Motion to Amend the Complain a Second Time [DE 33].  Judge Azrack referred the pending motions to this Court for a Report and Recommendation as to whether the motions should be granted.  *See* November 4, 2019 Electronic Order.  For the reasons which follow, this Court respectfully recommends to Judge Azrack that:  (1) Plaintiff's first motion for

leave to amend the Complaint [DE 24] be DENIED as moot; (2) Defendant's motion to dismiss [DE 28] be GRANTED, in part, and DENIED, in part; and (3) Plaintiff's second motion to amend the Complaint [DE 32] be GRANTED, in part, and DENIED, in part to the extent set forth in this Report and Recommendation.

## II.   BACKGROUND

### A.   Procedural History

On April 12, 2018, Plaintiff, proceeding *pro se*, filed an initial Complaint against Defendant seeking to "allow the NOL carryover of $167,448.00 to be allowed to the 2010 [tax year]," compensatory damages in the amount of $779.40 for the levy on Plaintiff's bank and brokerage accounts, and punitive damages in the amount of $5,000.  *See* Compl. [DE 1]. After several extensions of Defendant's time to answer, Defendant's counsel filed a notice of motion to dismiss the Complaint on August 24, 2018 for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for relief under Rule 12(b)(6). *See* Defendant United States of America's Notice of Motion to Dismiss ("Def.'s Notice") [DE 13].  Judge Azrack dismissed Defendant's motion, without prejudice, on August 30, 2018 for failure to comply with the pre-motion conference requirement.  *See* August 30, 2018 Electronic Order.   Following Defendant's letter motion for a pre-motion conference, Judge Azrack waived that requirement and on October 9, 2018 set a briefing schedule for Defendant's motion to dismiss.  *See* October 9, 2018 Electronic Order.  Prior to Defendant's motion being fully briefed and filed, Plaintiff filed a motion for leave to amend the Complaint on April 24, 2019.  *See* Plaintiff's Motion for Leave to File Amended Complaint [DE 24]; Plaintiff's

Memorandum of Law in Support of Motion to Amend ("Pl.'s First Mem.") [DE 24].[1]  Shortly

thereafter, the fully briefed motion to dismiss was filed on June 14, 2019.  *See* Defendant's

Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") [DE 28-1]; Plaintiff's

Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n.") [DE 28-10];

Defendant's Reply Memorandum in Support of Motion to Dismiss ("Def.'s Reply") [DE 28-11].

That same day, Defendant's counsel filed opposition to the motion seeking leave to amend.  *See*

DE 29

On September 16, 2019, Plaintiff filed his reply [DE 32] on the motion for leave to

amend and the motion was thereby fully briefed.  *See* Defendant's Memorandum of Law in

Opposition to Motion to Amend ("Def.'s Opp'n.") [DE 29]; Plaintiff's Reply Memorandum in

Support of Motion to Amend ("Pl.'s Reply") [DE 32].  That same day, however, Plaintiff filed a

***second*** motion for leave to amend the Complaint, along with a proposed Second Amended

Complaint.  *See* Plaintiff's Second Memorandum of Law in Support of Motion to Amend ("Pl.'s

Second Mem."), DE 33, Exhibit 1; Plaintiff's Proposed Amended Complaint, DE 33, Exhibit 2.

The Government did not submit opposition to Plaintiff's second motion for leave to amend the

Complaint, but the Government also did not withdraw its initial opposition to the first motion or

and did not consent to Plaintiff's Proposed Amended Complaint.

---

[1]     That same day, the pro se Plaintiff filed a document entitled "Plaintiff's Opposition to Defense's Motion to Dismiss."  See DE 23-1.  The first paragraph of that document reads as follows:   "It was brought to my attention that an amended complaint does not serve in lieu of my response to defense's motion to dismiss.  Still I have to respond to defense's motion to dismiss and these issues were addressed in my amended complaint, it was suggested I submit both my response to defense's motion to dismiss and my amended complaint at the same time.  And to make reference to the respective lines in the amended complaint that help clarify the issues brought up in defense's motion to dismiss."  *Id.*

### B.      The Proposed Amended Complaint

The following facts are taken from Plaintiff's Proposed Amended Complaint attached to his second motion to amend.  These facts are accepted as true for purposes of the pending motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party.  *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).  Moreover, because Plaintiff is proceeding *pro se*, the Court is obligated to construe his pleadings liberally "to raise the strongest arguments that they suggest."  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

On December 5, 2015, the Internal Revenue Service ("IRS") issued a Notice of Levy[2] to Plaintiff in the amount of $199,908.93 for tax assessments based on Plaintiff's 2008 and 2009 substitute tax returns.  *See* Proposed Amended Complaint ("PAC") [DE 33-2] ¶ 5.  Substitute tax returns[3] were submitted on Plaintiff's behalf for the 2008 and 2009 tax years because Plaintiff failed to file any tax returns for either year.  PAC ¶ 9.  On December 12, 2015, Plaintiff requested a hearing to contest the Notice of Levy, claiming he should not have been assessed any taxes for 2008 and 2009.  *Id.* ¶ 7.  Instead of conducting a hearing, the IRS agreed to release the levy on the condition that Plaintiff file his 2008 and 2009 tax returns.  *Id*. ¶¶ 8-9.  The IRS released the levy on December 16, 2015.  *Id.* ¶ 9.

---

[2]      The IRS may collect delinquent taxes from a taxpayer by issuing a levy on the taxpayer's "property and rights to property."  *See* 26 U.S.C. § 6331(a).  The levy protects the Government against loss or diversion of the subject property while such claims are being resolved.  *See Celauro v. U.S. I.R.S.,* 411 F. Supp. 2d 257, 264 (E.D.N.Y. 2006), *aff'd sub nom. Celauro v. United States,* 214 Fed. App'x 95 (2d Cir. 2007) (citation omitted).

[3]      The IRS is authorized to prepare and file a substitute tax return for a taxpayer who fails to file a timely return.  *See* 26 U.S.C. § 6020.  A substitute tax return estimates a taxpayer's return based on other information the IRS has available from employers, banks, etc.

Thereafter, Plaintiff filed his 2008 and 2009 tax returns on February 2 and February 16, 2016. *Id*. ¶¶ 13-14. In both returns, Plaintiff reported a tax liability of $0 and claimed a net operating loss deduction. *Id*. ¶¶ 12, 15. If a taxpayer's allowable deductions and exclusions exceed its gross income in a given tax year, the resulting difference is deemed a net operating loss ("NOL"). [4] In 2004, Plaintiff incurred an NOL in the amount of $158,197.00 ("2004 NOL"). *Id*. ¶¶ 20, 30. Plaintiff attempted to carryover his 2004 NOL to the 2008 tax year in the form of a deduction in the amount of $158,197.00. *Id*. Plaintiff also incurred an NOL in 2008 in the amount of $383.00 ("2008 NOL"). *Id*. Plaintiff attempted to carryover the sum of his 2004 and 2008 NOLs. To the 2009 tax year as a deduction in the amount of $158,580.00. *Id*. Plaintiff had a net operating loss in 2009 in the amount of $8,868.00 ("2009 NOL"). *Id*. The PAC alleges that Plaintiff is entitled to carryover losses in the amount of $167,448.00 as deductions, representing the combined total of Plaintiff's 2004, 2008, and 2009 NOLs. *Id*.

Plaintiff received a 105C letter from the IRS dated April 16, 2016, which disallowed the NOL deduction claimed for the 2009 tax year. *Id*. ¶ 15. The 105C letter states, in pertinent part, that: "[T]he election to waive the carryback period was not timely filed. The Net Operating Loss must be carried back to any applicable gain before it can be carried forward." *Id*. The April 16, 2016 105C letter was from the Holtsville IRS office and advised that the disallowance should be appealed by submitting a formal written protest to the Office of Appeals located in Holtsville, New York. *Id*. The PAC alleges that the IRS incorrectly assessed Plaintiff's 2009 tax liability

---

[4]    The NOL can be carried back ("carrybacks") and deducted from taxable income for two years preceding the loss year, or the NOL can be carried forward ("carryovers") and deducted from taxable income for up to twenty subsequent tax years. *See* 26 U.S.C. § 172(a), (c). An NOL deduction may be claimed until the aggregate NOL is completely depleted. *See id*.

and disallowed his 2009 NOL deductions because it processed Plaintiff's 2009 tax return before processing his 2008 tax return. *Id*. ¶¶ 15-16. Having processed the 2009 tax return first, Plaintiff's 2009 deductions and tax liability were based on his 2008 substitute tax return as opposed to the newly filed 2008 tax return. *Id*. Consequently, a second Notice of Levy was issued against the Plaintiff on May 3, 2016 in the amount of $135,269.58. *Id*. ¶ 17. The second Notice was sent to Plaintiff's bank and brokerage firm, as well as his wife's place of employment. *Id*. ¶ 21.

Plaintiff filed a written formal protest of the 2009 disallowance and the second Notice of Levy with the Holtsville Office of Appeals on May 11, 2016. *Id*. ¶¶ 24, 32. On May 20 and May 24, 2016, the IRS levied money from Plaintiff's bank account with the Teachers' Federal Credit Union ("TFCU") and his brokerage account with Interactive Brokers, LLC. *Id*. ¶ 30. Plaintiff alleges that this levy caused his business to close. *Id.* ¶ 26.

In September 2017, Plaintiff received a 105C letter from the IRS dated December 1, 2016 similarly disallowing his NOL deductions for the 2008 tax year.[5] *Id*. ¶ 34. Plaintiff submitted a written formal protest of the 2008 disallowance with the Holtsville Office of Appeals on October 4, 2017. *Id*. ¶ 32, 34. In December 2017, Plaintiff spoke with a representative from the Office of Appeals and requested a conference to discuss his formal protests. *Id*. ¶ 74. During that time, Plaintiff obtained the assistance of the IRS Taxpayer Advocate Service which was allegedly also communicating with the Office of Appeals on Plaintiff's behalf and relaying correspondences to the Office of Appeals. *Id*. ¶¶ 25, 28, 35, 99-110. Plaintiff also sent letters to

---

[5]      Although the letter is dated December 1, 2016, the PAC alleges that Plaintiff only received it from the Taxpayer Advocate Service ("TAS") in September 2017. *See* PAC ¶¶ 66-67. To date, Plaintiff states he has never received the original letter from the IRS. *Id.*

the Office of Appeals, either directly or indirectly through the IRS Taxpayer Advocate Service, regarding the impact the levy had on his credit, the closing of his business as a result of the levy, and compensation for the violation of his rights.  *Id*. ¶ 105.

On February 2, 2018, Plaintiff's formal protests were denied without a hearing and the 2008 and 2009 disallowances were upheld.  *Id*.  Thereafter, Plaintiff filed a request to reopen his formal protests and schedule a conference with the Holtsville Office of Appeals.  *Id*. ¶¶ 83-84. This request was denied.  *Id*.  Notwithstanding the denial of Plaintiff's formal protests, the IRS has since returned all of the monies levied from Plaintiff's bank and brokerage accounts.[6]  *Id*. ¶ 35.  The IRS has also abated all tax assessments, fees, and penalties for Plaintiff's 2008 and 2009 tax years.  *Id*. ¶ 19.  However, according to Plaintiff, the IRS "Account Transcripts" for Plaintiff's 2008 and 2009 tax years still fail to reflect the proper amount of NOL deductions to which the Plaintiff is allegedly entitled.  *Id*. ¶ 30.  Plaintiff claims that such NOL deductions should be reflected in his Adjusted Gross Income ("AGI") but they are not.  *Id*.

Based on the foregoing allegations, Plaintiff's PAC asserts a total of five claims in Counts I–III.  Count I asserts three claims arising from the IRS's levy on Plaintiff's bank and brokerage accounts, including:  (1) an unauthorized collection claim, pursuant to 26 U.S.C. § 7433; (2) an unauthorized disclosure claim, pursuant to 26 U.S.C. § 7431; and (3) a claim for

---

[6]     Almost all of the money levied was returned to Plaintiff prior to the commencement of this action.  *See* Pl.'s Opp'n at 9, 10, 15.  After this action was initiated, the IRS learned for the first time that Plaintiff still had not received $340.40 levied from Plaintiff's TFCU account.  *Id*.  Plaintiff admits that he has since received the remaining $340.40 from the IRS, plus the interest accrued during the time this sum was levied.  *Id*.

reasonable administrative and litigation costs, pursuant to 26 U.S.C. § 7430.  *See* PAC at pages

36-37.[7]  In connection with Count I, Plaintiff seeks

> $6,629.00 Compensatory and punative [*sic*] damages Pursuant to 26 U.S.C.
> § 7430 & 26 U.S.C. § 7433
>
> $75.00 Legal processing fee from Teachers Federal Credit Union to enforce
> the improper levy
>
> $4.00 commissions from Interactive Brokers for the liquidation of positions
> to enforce the unlawful levy.
>
> $400.00 Cost to file this case.
>
> $150.00 Price paid to Nationwide Court Services.  Cost to deliver
> Summons'.
>
> $1,000.00 for violation of 26 U.S.C. § 7431 unauthorized disclosure of
> return information.
>
> $5,000.00,   It is Plaintiff's belief, that the plaintiff is not being greedy
> asking or a huge amount.  However, plaintiff does realize what's good for
> the goose is good for the gander. . . . this levy forced close the plaintiff's
> business and violated numerous of the plaintiff's rights.  Additionally to
> serve as a deterrent to further IRS abuse.

*Id*.

Count II asserts a claim for the "allowance of an NOL carryover in the amount of

$158,580.00 to be allowed for 2008 tax year pursuant to 26 U.S.C. § 7422."  *Id*. at page 37.

Count III asserts a claim for the "allowance of an NOL carryover in the amount of $167,448.00

to be allowed for the 2009 tax year pursuant to 26 U.S.C. § 7422."  *Id*.  In the "Wherefore"

clause of the PAC's "Request for Relief" section, Plaintiff requests that the Court:  (1) "enter

judgment in Plaintiff's favor on Count I of the Complaint in the amount of $6,629.00;" (2) "enter

judgment in Plaintiff's favor on Count II of the Complaint an AGI/NOL carryover in the amount

---

[7]     At the conclusion of the enumerated paragraphs in the PAC, Plaintiff lists his causes
of action separately in linear fashion without any paragraph designations.  The Court identifies
these statements by page number in order to locate them more readily.

$158,580.00 to be allowed/entered/refunded/credited for tax year 2008"; and (3) "enter judgment in Plaintiff's favor on Count III of the Complaint an AGI/NOL carryover in the amount $167,448.00 to be allowed/entered/refunded/credited for tax year 2009." *Id*. at page 38.

## III.   LEGAL STANDARD

### A.   Rule 15(a)(1)

Pursuant to Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course within ... 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  If more than twenty one days have elapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" but "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal citations omitted). The adequacy of an amended complaint "is to be judged by the same standards as those governing the adequacy of a filed pleading."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Vosburgh v. Burnt Hills-Balston Lake Central School Dist.,* 1:18-CV-1003, 2019 WL 315054, at *11 (N.D.N.Y.  Jan. 24, 2019).  Whether to grant leave to amend is a decision squarely within the district court's discretion.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 540 (2010) ("[Rule 15(a)] gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend").

### B.      Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols. Houston, Hodgson, & CorteseCosta, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. N.Y. Yankees P'ship,* 486 Fed. App'x. 894, 895 (2d Cir. 2012) (summary order) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992) (internal quotation marks omitted)). When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000).

### C.      Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007)).  In other words, a plaintiff must allege sufficient facts to "nudge[ ] their claims across

the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678, 129 S.Ct. 1937.  Although the Court must accept the factual allegations of a complaint as

true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*

(quoting *Twombly*, 550 U.S. at 55, 127 S.Ct. 1955).  "In deciding a motion to dismiss, the Court

is confined to 'the allegations contained within the four corners of [the] complaint,' but this has

been interpreted broadly to include any document attached to the complaint, any statements or

documents incorporated in the complaint by reference, any document on which the complaint

heavily relies, and anything of which judicial notice may be taken." *See Diamond Collection,*

*LLC v. Underwraps Costume Corp.*, No. 17-CV-0061, 2019 WL 347503, at *2 (E.D.N.Y.

Jan. 22, 2019) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)).

     The Court notes that the Plaintiffs are proceeding *pro se* and that their submissions

should be held "'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes*

*v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404

U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).  District courts should "read the pleadings

of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they

suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation and

citation omitted).  Nevertheless, the Court is also aware that *pro se* status "does not exempt a

party from compliance with relevant rules of procedural and substantive law." *Traguth v.*

*Zuck,* 710 F.2d 90, 95 (2d Cir. 1983); *Griffin v. Warden of the Otis Bantum Corr. Ctr.*, 20CV1707, 2020 WL 1158070, at *1 (S.D.N.Y. Mar. 10, 2020).

 "When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008)(citation and internal quotation marks omitted); *Phillips v. Orleans Cnty.*, 1:18-cv-00752, 2019 WL 3088051, at *4 (W.D.N.Y. July 15, 2019).  Here, the Court elects to consider the merits of Defendant's motion to dismiss in tandem with Plaintiff's second motion for leave to amend the Complaint since both were referred to this Court.[8]

## IV.    DISCUSSION

### A.    Count II and Count III - Tax Refund Claims Pursuant to 26 U.S.C. § 7422

Defendant argues that the Court lacks jurisdiction over Counts II and III because the relief sought in connection with these two counts is barred by the Declaratory Judgment Act, or, in the alternative, because Plaintiff has not exhausted his administrative remedies.  *See* Def.'s Mem. at 8-11.  Counts II and III of the PAC seek the "allowance of an NOL carryover in the amount of $158,580.00 to be allowed for 2008 tax year pursuant to 26 U.S.C. § 7422" and the

---

[8]    Plaintiff's first motion for leave to amend the Complaint sought to add a claim under the Fifth Amendment for an unconstitutional taking under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  The Government opposed such an amendment arguing that it was futile.  *See generally* Def.'s Opp'n.  Plaintiff's second motion for leave to amend omitted a claim under the Fifth Amendment, and therefore the Court need not address this argument since it is moot.  *See generally* PAC.

Plaintiff's second motion for leave to amend the Complaint also clarified that Plaintiff does not seek to claim any NOL deductions for the 2010 tax year, but instead seeks an "allowance" of an NOL deduction (*i.e.,* carryover) to his 2008 and 2009 tax returns.  Accordingly, the Court need not address Defendant's argument that Plaintiff failed to exhaust administrative remedies for the NOL deduction claimed in 2010.

"allowance of an NOL carryover in the amount of $167,448.00 to be allowed for the 2009 tax year pursuant to 26 U.S.C. § 7422."  Based on the express reference to 26 U.S.C. § 7422 in the two counts and 28 U.S.C. § 1346(a)(1) elsewhere in the PAC, the Court concludes that Plaintiff is alleging a tax refund claim for the 2008 and 2009 tax years.

Absent a waiver, the United States government and its agencies are immune from suit by virtue of the government's sovereign immunity.  *See F.D.I.C. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).  Any waiver of sovereign immunity must be expressed in unequivocal terms.  *See United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992).  If the Government has sovereign immunity, the Court has no jurisdiction to hear the case.  *See Meyer*, 510 U.S. at 475.  If "there is no statute expressly waiving the sovereign immunity of the United States, the court lacks subject matter jurisdiction to adjudicate the claim."  *Perry v. Wright,* No. 12-CV-0721, 2013 WL 950921, at *4 (S.D.N.Y. Mar. 8, 2013) (citing *Tucker v. U.S.,* No. 96-CV-6039, 1998 WL 708923 at *1 (E.D.N.Y. Jul. 6, 1998)).

"Through 28 U.S.C. § 1346, Congress has broadly consented to suits [seeking a refund of taxes] against the U.S. in district courts." *Suvak v. United States*, No. 12 CIV. 6004 JCF, 2013 WL 2217171, at *2 (S.D.N.Y. May 21, 2013), *adhered to on reconsideration,* No. 12-CV-6004, 2013 WL 2460192 (S.D.N.Y. June 7, 2013).  Section 1346 provides district courts with original jurisdiction over "[a]ny civil action against the United States for the *recovery* of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority."  28 U.S.C. § 1346(a)(1) (emphasis added).  Section 7422 of the Internal Revenue Code (Title 26), in turn, provides that, prior to maintaining a suit in district court "for the *recovery* of any internal revenue tax alleged to have been

13

erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority … a claim for refund or credit [must be] duly filed with the Secretary." 26 U.S.C. § 7422(a) (emphasis added).

Although Count II and Count III each purport to assert a claim for a "tax refund," the PAC does not seek a refund of taxes improperly assessed or collected or a penalty claimed for the 2008 and 2009 tax years. Plaintiff seems to acknowledge this fact but argues that, while he is "not [due] a cash refund," he is "due a refund in the form of an NOL carryover for the [2009 and 2008 tax year]." *See* Pl.'s Opp'n at 6. Plaintiff claims that he is "seeking a ruling for the refund of an NOL carryover for tax year 2008 and tax year 2009. Just as if the Judge were making a ruling on a cash refund for 2008 and 2009." *Id.*; *see also* Pl.'s First Mem. at 4 ("If the court will allow a clarification of the nature of relief being sought. That plaintiff believes a 'ruling' concerning the NOL carryover is the correct terminology.").

Plaintiff's use of the term "refund" in this context, however, is misplaced. An NOL carryback or carryover does not itself constitute a "refund" to a taxpayer. Section 172 of the Internal Revenue Code (Title 26), allows a taxpayer whose operations are unprofitable in one year to apply (*i.e.,* carryover or carryback) the net losses of that year as a deduction against the income in another year. *See* 26 U.S.C. § 172(a)(1) ("There shall be allowed as a *deduction* for the taxable year … the aggregate of the net operating loss carryovers to such year, plus the net operating loss carrybacks to such year") (emphasis added). An NOL deduction is claimed to offset a taxpayer's "taxable income."[9] *See* 26 U.S.C. § 161 ("In computing taxable income under section 63, there shall be allowed as deductions the items specified in [Part VI]," which

---

[9]        Taxable income, as defined under 26 U.S.C. § 63, should not be conflated with adjusted gross income, as defined under 26 U.S.C. § 62.

includes NOL deductions.); 26 U.S.C. § 63 ("[T]he the term "taxable income" means gross income minus the deductions allowed by this chapter (other than the standard deduction)). Although a taxpayer's "taxable income" determines, in part, his or her assessed tax liabilities, a "tax refund" is only due when a taxpayer's tax payments exceed their tax liabilities (*i.e.,* overpayment of taxes). *See* 26 U.S.C. § 6401; 26 U.S.C. § 6402 ("In the case of any overpayment, the Secretary … shall … refund any balance to such person."). As such, claiming an NOL deduction may result in a tax refund but it does not guarantee it will. *See Wolfe v. United States,* No. 15-CV-21530, 2015 WL 12881161, at *2 (S.D. Fla. Oct. 21, 2015) ("An NOL carryback *may* result in a refund of taxes previously paid, and a carry-forward *may* result in the reduction of taxes in future years.") (emphasis added); *Textron, Inc. v. United States,* 418 F. Supp. 39, 46 (D.R.I. 1976), *aff'd,* 561 F.2d 1023 (1st Cir. 1977) ("The carryover is simply a tax deduction which can reduce a taxpayer's future tax liability only if the taxpayer generates income [the years which the NOL carryovers and/or carrybacks can be applied]. If there is no income in any of [those] years, there can be no benefit to the taxpayer from the carryovers.").

Therefore, a ruling on whether a plaintiff is entitled to claim an NOL deduction (*i.e.,* allowed to carryover or carryback an NOL to a certain taxable year) is separate and distinct from a determination whether a plaintiff is entitled to a tax refund. Although under some circumstances a court must decide a taxpayer's entitlement to a deduction to determine the tax refund owed to the taxpayer, such a determination is made in furtherance of the tax refund claim which the court has jurisdiction to adjudicate. *See Silipigno v. United States,* 749 Fed. App'x 59, 61 (2d Cir. 2019) ("[I]n an action brought pursuant to 28 U.S.C. § 1346(a)(1) for a refund of taxes already paid to the government, the district court is required to redetermine the entire tax liability.") (citing *R.E. Dietz Corp. v. United States,* 939 F.2d 1, 4 (2d Cir. 1991)). Where, as

here, Plaintiff acknowledges that he is not due a tax refund from an overpayment of taxes, any determination regarding his entitlement to NOL deductions for the 2008 and 2009 tax years would effectively constitute a declaration of his rights.  While the Declaratory Judgment Act ("Act") empowers courts to "declare the rights and other legal relations of any interested party seeking such declaration," it expressly excepts cases "with respect to Federal taxes."  28 U.S.C. § 2201(a).  "Thus, whether or not that Act waives the sovereign immunity of the United States with respect to other types of actions, it explicitly excludes from any such waiver the power to declare rights or obligations with respect to federal taxes."  *S.E.C. v. Credit Bancorp, Ltd.,* 297 F.3d 127, 137 (2d Cir. 2002).

Accordingly, the Court respectfully recommends to Judge Azrack that Count II and III of the PAC be dismissed because the Court lacks jurisdiction to adjudicate the claims under Rule 12(b)(1).  *Chavez v. W. Texas Outreach,* No. 18-CV-0062, 2019 WL 6037269, at *3 (W.D. Tex. Sept. 11, 2019) ("Because the plaintiff requests that the Court make declarations regarding the payment of his taxes and penalties, the plaintiff's declaratory judgment claims are barred by the Declaratory Judgment Act and dismissed for lack of jurisdiction."); *Votzmeyer v. United States,* 202 B.R. 235, 236 (S.D. Tex. 1996) ("The Court lacks subject matter jurisdiction to issue a declaratory judgment with respect to this tax case.").

Alternatively, even if the Court does have jurisdiction over Counts II and III of the PAC, dismissal is still warranted under Rule 12(b)(6) for Plaintiff's failure to state a claim upon which relief can be granted because Plaintiff fails to allege that he is entitled to a tax refund for the 2008 and 2009 tax years.  To the contrary, Plaintiff concedes that he is not entitled to a tax refund through his admission that he is "not [due] a cash refund" (*i.e.,* did not overpay his taxes for the 2008 and 2009 tax years).  Pl.'s Opp'n at 6; *see also Tilman v. United States*, 644 F.

Supp. 2d 391, 398 (S.D.N.Y. 2009) ("In a tax refund lawsuit, it is incumbent upon the claimant[s] to show that the United States has money which belongs to [them].") (internal quotation and citation omitted).  Plaintiff further concedes that:  (1) all tax assessments, fees, and penalties for the tax years at issue have been abated; (2) he has no tax liabilities for those years; and (3) he has since been refunded all the monies levied by the IRS.  PAC ¶¶ 19, 35.  Accordingly, dismissal of Count II and III of the PAC for Plaintiff's failure to state a claim under Rule 12(b)(1) would also be warranted under these circumstances.

Although the Court recognizes that a *pro se* complaint generally should not be dismissed without granting leave to amend at least once, it is clear from Plaintiff's submission that his theory of liability does not fall within the limited waiver of liability expressed in Section 7422.  Therefore, the issue is substantive and a "better pleading will not cure it."  *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

**B.     Count I - Unauthorized Collection Claim Pursuant to 26 U.S.C. § 7433**

Defendant argues that the Court lacks jurisdiction over Plaintiff's unauthorized collection claim set forth in Count I of the PAC because Plaintiff failed to exhaust administrative remedies.  Count I of the PAC seeks damages, pursuant to 26 U.S.C. § 7433, which provides the exclusive remedy for damages where, "in connection with any collection of Federal tax ... any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of [the Internal Revenue Code or regulations]."  26 U.S.C. § 7433(a).  Specifically, Plaintiff alleges that the IRS's levy on his bank and brokerage accounts constituted unauthorized collection activity and a negligent and reckless disregard of 26 U.S.C. § 7803(a)(3) (execution of duties in accord with taxpayer rights), 26 U.S.C. § 6611 (interest on

overpayments), 26 U.S.C. § 6202 (establishment by regulations of move or time of assessment), and various provisions of the Internal Revenue Manual.

As noted, the United States, as a sovereign, is immune from suit unless it has consented to be sued. *See Meyer*, 510 U.S. at 475. The United States has expressly consented to being sued under 26 U.S.C. § 7433 for damages caused by the wrongful collection of federal taxes. *See Buczek v. United States,* No. 15-CV-0273, 2018 WL 2119587, at *3 (W.D.N.Y. May 8, 2081), *appeal dismissed* (July 16, 2018) (citing 26 U.S.C. § 7433). "The government's waiver of sovereign immunity under § 7433 is, however, contingent on the exhaustion of administrative remedies: 'A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.'" *Id*. (quoting 26 U.S.C. § 7433 (d)(1)); *see also Dourlain v. United States,* No. 04-CV-0372, 2005 WL 3021858, at *2 (N.D.N.Y. Sept. 19, 2005) ("As a condition of waiver of sovereign immunity by the United States, an individual seeking to recover civil damages for taxes erroneously or illegally assessed or collected must first file an administrative claim for a refund with the IRS prior to filing suit in federal district court.").

To properly exhaust administrative remedies before filing suit under Section 7433, the relevant Treasury regulations require a taxpayer to submit an administrative claim: (1) "in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides;" (2) provide the taxpayer's personal information; (3) state the "grounds, in reasonable detail, for the claim;" (4) including a "description of the injuries incurred by the taxpayer filing the claim;" (5) "the dollar amount of the claim;" and (6) the "signature of the taxpayer." *See* 26 C.F.R. § 301.7433-1(e)(2). The taxpayer may then file suit in federal

district court when either the administrative claim is adjudicated or six months after the administrative claim is filed, whichever is earlier.  *See* 26 C.F.R. § 301.7433-1 (d).

Defendant argues that the formal protests purportedly serving as Plaintiff's administrative claims appear to be deficient in several respects.  *See* Def.'s Opp'n at 12.  Specifically, Defendant argues that it does not appear from the allegations pled by Plaintiff that the formal protests were addressed to the "Area Director, Attn: Compliance Technical Manager of the Eastern District of New York," that they included a description of the injuries incurred by Plaintiff as a result of the IRS collection activity, or that the protests included the dollar amount of the claim.  *See id.*  Read broadly, the PAC appears to assert that Plaintiff sent a written formal protest to the Holtsville Office of Appeals regarding both the 2009 disallowance and second Notice of Levy on May 11, 2016.  *See* PAC ¶¶ 24, 32.  The PAC further states that the April 16, 2016 disallowance letter "came from the office of the Area Director" and therefore "it stands to reason that a written Formal Protest in response to the [disallowance letter] would satisfy the requirement of notifying the Area Director."  *Id.* ¶ 100.  The April 16, 2016 disallowance letter was issued by the Holtsville office – the location to which Plaintiff claims he sent his formal protests.  *See* PAC ¶¶ 24, 32.  The PAC further alleges that Plaintiff sent additional letters to the Holtsville office, either directly or indirectly through the IRS Taxpayer Advocate Service, regarding the impact the levy had on Plaintiff's credit, the closing of Plaintiff's business as a result of the levy, and compensation for the violation of Plaintiff's rights.  *Id.* ¶ 105.  Thereafter, on February 2, 2018, the IRS representative from the Holtsville Office of Appeal denied the formal protests.  *Id.*

Liberally construing the *pro se* Plaintiff's allegations together, an inference can be drawn that the formal protests and supplemental letters were properly sent to the Area Director of the

area in which Plaintiff currently resides and that those communications described the injuries incurred by Plaintiff, the grounds for the claim, and the Plaintiff's taxpayer information. The February 2, 2018 denial of the formal protests also appears to be an omnibus denial of the claims contained in the formal protests and supplemental letters. Although the PAC does not specifically allege whether the formal protests or supplemental letters stated "the dollar amount of the claim," there is a possibility that they did based on the allegation that Plaintiff sent supplemental letters regarding "compensation for the violation of Plaintiff's rights." PAC ¶ 105.

The Court is obligated to permit a *pro se* plaintiff to amend his complaint if there is a "possibility that such an amendment will result in a claim being successfully pleaded." *Akinleye v. City of Yonkers*, No. 14-CV-5194, 2016 WL 3676692, at *3 (S.D.N.Y. July 6, 2016) (*Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). While factual disputes may arise regarding the nature and substance of the formal protests and supplemental letters and the proper Area Director to whom the purported administrative claim should have been sent, these issues are factual in nature and are not properly resolved at the motion to dismiss stage of the litigation.

Accordingly, the Court respectfully recommends that the Defendant's motion to dismiss Plaintiff's unauthorized collection claim for damages under 26 U.S.C. § 7433(a) -- based on Defendant's alleged negligent and reckless disregard of 26 U.S.C. § 7803(a)(3) and 26 U.S.C. § 6611 – be DENIED. Instead, the Court recommends that Plaintiff be granted leave to amend his claim for damages under 26 U.S.C. § 7433(a) to sufficiently allege with particularity whether the formal protests and supplemental letters stated the dollar amount of the claim made to the IRS, along with the dollar amount stated, and identification of the specific letter(s) in which the information was stated.

The Court, however, respectfully recommends to Judge Azrack that she DENY Plaintiff's request for leave to amend his claim for damages under 26 U.S.C. § 7433(a) based on Defendant's negligent and reckless disregard of 26 U.S.C. § 6202 (establishment by regulations of move or time of assessment) and various provisions of the Internal Revenue Manual.  The Court makes this recommendation because permitting such amendment would be futile. Section 6202 implicates the assessment of taxes; however, "[b]y its plain terms, [26 U.S.C. § 7433(a)] provides a remedy only for improper conduct in connection with collection—not assessment—of a federal tax by an officer or employee of the [IRS]." *Wright v. Bassett Healthcare Network,* No. 13-CV-0211, 2015 WL 6143887, at *1 (N.D.N.Y. Sept. 16, 2015). Moreover, a violation of the provisions of the Internal Revenue Manual cannot be the basis for a claim under Section 7433.  *See Whiting v. United States*, No. 15-CV-01472, 2016 WL 3946920, at *4 (C.D. Cal. June 21, 2016) ("Section 7433 does not contemplate liability for violations of the Internal Revenue Manual."); *Ludtke v. United States*, 84 F. Supp. 2d 294, 302 n.3 (D. Conn. 1999) ("Even assuming that the IRS failed to follow procedures contained in the Internal Revenue Manual, it cannot be the basis for a claim under Section 7433.") (citing *Gonsalves v. IRS,* 975 F.2d 13, 16 (1st Cir.1992) (finding that Section 7433 does not permit taxpayers to sue the government for violations of internal IRS policies like those in the Internal Revenue Manual)); *Kachougian v. United States,* No. 96–CV-508, 1998 WL 233750 at *2 (D.R.I. 1998) (failure to follow guidelines in IRS manuals does not constitute a violation of a provision or regulation of the Tax Code and is not actionable under § 7433).

## C.    Unauthorized Disclosure Claim Pursuant to §§ 6103 and 7431

Count I of the PAC seeks statutory damages, pursuant to 26 U.S.C. §§ 6103 and 7431, for Defendant's unauthorized disclosure of Plaintiff's tax return information.  "These provisions

generally provide that it is unlawful for a federal official to inspect and/or disclose a taxpayer's tax return absent authorization." *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 523 (E.D. Va. 2014); *McKenzie-El v. Internal Revenue Serv*., No. ELH-19-1956, 2020 WL 902546, at *12 (D. Md. Feb. 24, 2020).  Section 6103 provides, in relevant part, that tax returns "shall be confidential" and that "no officer or employee of the United States.... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer," unless otherwise permitted by law.  *See* 26 U.S.C. § 6103(a).  Section 7431 provides a civil cause of action for violations of § 6103.  *See Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 870 (9th Cir. 2009); *Dean v. United States*, No. 09-3095, 2009 WL 4911939, at *2 (D.N.J. Dec. 11, 2009).  The statute provides, in pertinent part, that: "If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States."  26 U.S.C. § 7431.

The term "return information" refers to "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions ... ."  *Id.* § 6103(b)(2)(A).  A taxpayer's identity is "the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number ... or a combination thereof."  *Id.* § 6103(b)(6).  To state a claim under § 7431(a), a plaintiff must adequately plead "(1) that the disclosure was unauthorized, (2) that the disclosure was made 'knowingly or by reason of negligence' and (3) that the disclosure was in violation of Section 6103."  *Flippo v. United States*, 670 F. Supp. 638, 641 (W.D.N.C. 1987), *aff'd*, 849 F.2d 604 (4th Cir. 1988) (per curiam); *see also Kenny v. United States*, 489 Fed. App'x 628, 631 (3d Cir. 2012) ("To establish a claim under § 7431, [a plaintiff] must

demonstrate (1) a violation of 26 U.S.C. § 6103 and (2) that the violation resulted from knowing or negligent conduct.").  This requires that a plaintiff "specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 100-01 (D.D.C. 2018) (citation omitted).  And, a "plaintiff must also plead what specific return or return information an employee of the United States disclosed that violated § 6103." *Id.* at 101 (citation omitted).  Thus, "mere allegations of a[n unauthorized] disclosure are insufficient to support a cause of action." *Dean v. United States*, 2010 WL 1257792, at *4 (alteration in *Dean*) (citation omitted); *see also May v. United States*, 17-CV-04157, 2017 WL 6419298, at *2 (W.D. Mo. Dec. 15, 2017) (dismissing conclusory § 7431 claim under Rule 12(b)(6)).

Even construing the allegations liberally and in the light most favorable to the Plaintiff, the PAC does not sufficiently plead an unauthorized disclosure claim under 26 U.S.C. §§ 6103 and 7431.  The PAC lacks any factual allegations that the IRS disclosed any of Plaintiff's "return information," that any such disclosure was unauthorized, or to whom the disclosure was made.  The PAC appears to assume that violations of Sections 6103 and 7431 have occurred because the IRS sent a Notice of Levy on Plaintiff's bank, his brokerage firm, and his wife's place of employment.  PAC ¶ 21.  However, this single speculative allegation is insufficient to state a plausible claim.  *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (observing that Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citation omitted); *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.  As the Court has observed above, however, since there is a "possibility that such an amendment will result in a claim being successfully pleaded," the Court respectfully

recommends to Judge Azrack that Plaintiff's motion for leave to amend his unauthorized

disclosures under 26 U.S.C. §§ 6103 and 7431 be GRANTED.

## V.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Azrack, pursuant

to 28 U.S.C. § 636(b), that:  (1) Plaintiff's first motion for leave to amend the Complaint [DE 24]

be DENIED as moot; (2) Defendant's motion to dismiss [DE 28] be GRANTED, in part, and

DENIED, in part; and (3) Plaintiff's second motion to amend the Complaint [DE 32] be

GRANTED, in part, and DENIED, in part.  This Court specifically recommends as follows that:

1.    Plaintiff's tax refund claims, pursuant to 26 U.S.C. § 7422, be dismissed under
       Rule 12(b)(1) or Rule 12(b)(6);

2.    Plaintiff be granted leave to amend his unauthorized collection claim, pursuant to
       26 U.S.C. § 7433, based exclusively on the alleged violations of 26 U.S.C.
       § 7803(a)(3) and 26 U.S.C. § 6611; and

3.    Plaintiff be granted leave to amend his unauthorized disclosure claim, pursuant to
       26 U.S.C. § 7431.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record

shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to**

**be sent to the Chambers of the Honorable Joan M. Azrack.  Any requests for an extension**

**of time for filing objections must be directed to Judge Azrack prior to the expiration of the**

**14-day period for filing objections**.  Failure to file objections will result in a waiver of those

objections for purposes of appeal. *See, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v.*

*Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v.*

*Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendant's counsel is directed to serve a copy of this Report and Recommendation**

**forthwith upon the *pro se* Plaintiff by overnight mail and first-class mail and to file proof of**

**such service on ECF forthwith.**

The Court is also sending a copy of this Order by first-class mail to the *pro se* Plaintiff.

**SO ORDERED:**

Dated:  Central Islip, New York
        March 13, 2020

                                        /s/ A. Kathleen Tomlinson
                                        A.  KATHLEEN TOMLINSON
                                        United States Magistrate Judg